specifically direct the attention of the jurors to the expression of the court, but was the general instruction to the jury provided by section 420 of the Code of Criminal Procedure. In any event, if the judge sought to efface from the minds of the jury an impression made by this characterization of the conduct of the defendant, he should have acted promptly, and by explicit caution to the jury to disregard the remark made. Nor can we say this expression had no effect upon the jurors. The case at best was a close one, and a verdict for the defendant would have been amply justified by the evidence. There was an apparent lack of motive for the defendant to make any agreement by which he was to pay one-third of the expenses incurred in defending the levy made by virtue of the execution which he held as deputy sheriff. His fees would be a bagatelle. His interest in sustaining the validity of the levy was merely perfunctory,—simply that of an official intrusted with an execution against property. In view, therefore, of the fact that the guilt of the defendant was not established by any great preponderance of the testimony, it may well be claimed that the interjected expression of the court may have influenced the jury against the defendant.

The judgment of conviction is reversed, and a new trial ordered. All concur.

(37 App. Div. 553.)

### WAMSLEY v. ATLAS S. S. CO., Limited.

(Supreme Court, Appellate Division, First Department. February 24, 1899.)

CARRIERS OF GOODS—CONVERSION—EVIDENCE—PROVINCE OF JURY.

Freight packed in a brandy case could not be found after an inspection of "those parts of the ship where such things were likely to be." The carrier promised to look further, and, finally, after repeated inquiries by the owner, announced that the box could not be found. Pending an action for conversion, however, it was found in a locker in the forepeak of the ship. There was nothing to show how it got there, except testimony of the chief officer, who said that on some voyage, but whether on the one in suit he could not be certain, he had had some whisky cases containing signals moved to the locker. Why the locker had not been searched for the freight was not shown. Held, that the question whether the carrier was guilty of conversion was for the jury.

Appeal from trial term, New York county.

Action by William E. Wamsley against the Atlas Steamship Company, Limited. From a judgment entered on a dismissal of the complaint on the merits, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Alexander S. Bacon, for appellant.
Everett P. Wheeler, for respondent.

BARRETT, J. The action was for the conversion of a box of photographic negatives and views owned by the plaintiff's assignor, Lieut. Samuel F. Massey. This gentleman was a passenger upon one of the defendant's steamers, plying between South America, the

West Indies, and the port of New York. He had this box of negatives put on board the defendant's steamer Alleghany, in the harbor of ‘Port Limon, and given in charge of one of the cabin stewards named Brown. The box was simply marked, "J. & F. Martel Cognac." It was an old brandy case, which Lieut. Massey had utilized as a receptacle for his negatives. The box was placed by the steward in either the baggage or storage room, which is not entirely clear or very material. The chief officer testified that during the voyage he saw it in the baggage room, while Lieut. Massey testified that it was taken by Brown to the storeroom. It was, at all events, in the possession of the defendant. Lieut. Massey did not attempt to include this box in his ordinary baggage. He told Brown that it would probably be carried as freight. He also had three demijohns of mineral water, which he was bringing to this country to be analyzed. These demijohns were with the box of negatives, and were included in the statement to Brown as to carriage as freight. Upon the arrival of the steamer in New York, on or about the 14th of May, 1895, a hurried search was made for the box, and then the demijohns, but neither was found. Lieut. Massey then left the wharf without them. He, however, returned the next day, and learned that the demijohns had been found, but not the box. He, together with Brown and the wharfinger, then, as he testifies, inspected "those parts of the ship where such things were likely to be," but the box was not found. For some three weeks thereafter he went several times to the wharf, but was always told that the box could not be found. It was found, however, some months after the commencement of the action, in a locker in the forepeak of the ship. How it got there, and why this locker had not previously been searched, was not shown. Everything on that head was left to inference. The chief officer, it is true, testified that at some time (but whether during this particular voyage, or later, he could not with certainty say) he ordered four or five boxes of signals which were lying in the baggage room to be moved to the locker in the forepeak of the ship. This order was complied with. The boxes of signals were old whisky cases, and were similar in shape to the box of negatives. Upon a certain occasion, in the winter of 1895, after the commencement of this suit, this chief officer gave an order to have one of the boxes of signals brought up to him on the bridge, and accordingly a box was brought up there, which, on being opened, turned out to be Lieut. Massey's box of negatives. This was substantially all that the defendant proved on the subject. Upon this proof it asked the court to presume that, when the signal boxes were moved from the baggage room, the box of negatives was at the same time moved with them. There was not a particle of evidence, other than the plaintiff's, that any, much less a thorough, search was ever made for the missing box. The defendant undoubtedly promised to have the ship searched, and told Lieut. Massey that it had done so without success. But no proof on that head was furnished. It is true that Lieut. Massey testified that he participated in an inspection of those parts of the ship where such things as his box were likely to be, but that certainly was not such a thorough search as the defendant promised and was in duty bound to make.

After the incomplete and partial search of which Lieut. Massey thus speaks, the defendant promised to look further, and told him that the box would probably be found in a day or two. He kept on inquiring, and the defendant's agents kept on assuring him that the box was on board the vessel,—as, indeed, was the fact,—until at last they finally gave it up, and definitely declared that it could not be found. There was then no longer what Mr. Greenleaf, in his work on Evidence (volume 2, 15th Ed., § 644), speaks of as "a mere excuse or apology for not delivering the goods at present," but a final refusal, upon a ground which the jury might have found to be untenable and insufficient. At this point the door was closed against Lieut. Massey, and the legal status of the parties resulting therefrom became settled. The box, and also the claim, were thereupon assigned to the present plaintiff, and this action was brought.

The plaintiff alleged three things,—demand of the box, refusal, and conversion. The demand and refusal were admitted; the conversion denied. It will be observed that the action is not against the defendant as a common carrier upon its contract, nor is it for negligence or breach of duty. In other words, it is what was formerly trover, and not what was once called an action on the case. To maintain trover, or, at the present day, an action for conversion, it is sufficient for the plaintiff to show a refusal to deliver to him property to which he is entitled, upon a demand made upon the defendant while the property is in the latter's possession. Packard v. Getman, 4 Wend. 615. A demand and refusal is, under some circumstances, treated as but prima facie evidence of conversion, which the defendant may explain or rebut, as where the property has been stolen or lost, and so cannot be delivered to the owner. The remedy in such cases was assumpsit or a special action on the case. Hawkins v. Hoffman, 6 Hill, 588, and cases there cited by Bronson, J. But it was said in the latter case that trover would lie where the goods have been lost to the owner by the act of the carrier, though there may have been no intentional wrong; as where the goods are by mistake, or under a forged order, delivered to the wrong person. In Packard v. Getman, supra (upon the first appeal, 6 Cow. 757), it was said that "a demand and refusal is prima facie evidence of a conversion, but the defendant may give evidence to negative the presumption." And it was there held that as the defendant never had actual possession of a particular box, and as there was nothing on which to found a presumption that he clandestinely secreted, or in any way disposed of, this box, the case should have gone to the jury, and that it was for them to say whether they were satisfied that the defendant had converted to his own use the goods in question. When this case came again (4 Wend. 615), Chief Justice Savage summed up the governing rules as follows:

"Trover lies not against a carrier for negligence, as for losing a box, but it does for an actual wrong (Salk. 655); nor for goods lost or stolen from a carrier or wharfinger. There must be an injurious conversion; something more than a bare omission. 5 Burrows, 2825. Where a carrier loses goods by accident, trover does not lie; but where he is an actor, and delivers them to a third person, though by mistake, the action lies. Peake, 49. It lies also where the defendant refuses to deliver the goods according to contract,

he having the possession. 1 Taunt. 391; 4 Esp. 157. But if lost or stolen, so that he cannot deliver them, and his inability does not arise from any act of his own, trover does not lie, though case does."

Applying these principles to the case at bar, it is quite evident that the learned trial judge erred in taking the case from the jury. Upon the admission of a demand and refusal, with evidence tending to show that at the time of the demand the box was in the defendant's possession, and that the defendant had it in its power to give it up, the plaintiff was entitled to rest. Greenl. Ev. supra. The defendant was then authorized to negative or rebut the presumption of conversion arising therefrom. Whether it did so successfully, either by using the plaintiff's testimony and making it its own, or upon the testimony adduced affirmatively by itself, was, to say the least, a question for the jury. The box was not lost, nor had it been stolen. It was then on the ship, in the defendant's possession. At least, the jury might have drawn that inference from the evidence adduced. Had the action been for negligence, the defendant could have shown that the box was not lost, but had been carefully put away. It is idle to say that it was lost in the ship. It was possibly mislaid there. The locus of possession had been varied by the defendant's own servants, but the possession remained. A thorough search would have brought the box to light. But even if it were treated as lost, though simply stowed away by the defendant in its own vessel, still the defendant was bound to show that its inability to deliver the box did not arise from any act of its own. The case is entirely barren of evidence upon the latter head; barren of evidence, as we have seen, of how the box came to be where it was; and equally barren of evidence as to why it was not searched for in the very place where it was ultimately found. The case comes to this, then: The jury were authorized upon the evidence to find that, upon repeated demands by the owner for his property, the defendant, though in possession of it, refused to deliver it to him. When called upon, at least, to explain why it so refused, the defendant offered no evidence to negative or rebut the presumption arising from its refusal, but contented itself with furnishing meager testimony, from which inferences favorable to its contention might possibly be drawn. The most that can be said upon the latter head is that, taking all the circumstances into consideration, the question of conversion was properly for the jury.

None of the other points discussed in the respondent's brief call for special consideration. They are either immaterial in their relation to the gravamen of the action, namely, the conversion alleged, or they also depend upon conflicting evidence. In no aspect of the case should there have been a dismissal of the complaint.

The judgment appealed from should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.